**In re COMMISSION ON JUDICIAL TENURE AND DISCIPLINE.**

No. 95–21–M.P.

Supreme Court of Rhode Island.

Feb. 8, 1996.

Robert G. Flanders, Neal J. McNamara, Robert Kilmarx (amicus—common cause), for Plaintiff.

Richard P. McMahon, Marifrances McGinn, Harris Weiner/Joseph S. Larisa, Jr., for Defendant.

Before WEISBERGER, C.J., MURRAY, LEDERBERG and BOURCIER, JJ.

## OPINION

MURRAY, Justice.

This case comes before us on certiorari. On January 17, 1995, Chief Judge Robert F. Arrigan filed a petition for a writ of certiorari and a motion for a stay of a public hearing scheduled by the Commission on Judicial Tenure and Discipline (the commission). In an order dated January 19, 1995, this court denied the motion for a stay and deferred considering the petition for a writ of certiorari pending the commission's filing of a response to the petition. On January 23, 1995, the commission filed a motion to enlarge its time to respond to Chief Judge Arrigan's petition. On February 2, 1995, this court ordered the commission to file its response within twenty days after the commission issued its recommendations regarding its charges against Chief Judge Arrigan. After conducting a public hearing, the commission issued its report and recommendation on March 14, 1995. On April 13, 1995, this court granted Chief Judge Arrigan's petition for writ of certiorari.

Chief Judge Arrigan raises several issues on certiorari before this court. Specifically, Chief Judge Arrigan challenges the constitutionality of the composition of the commission on the ground that its members include representatives of the Legislature in violation of this state's constitutional doctrine of separation of powers. Chief Judge Arrigan also challenges discovery orders made by the presiding justice of the Superior Court that limit his right to depose two witnesses. The court is evenly divided on the issue of the constitutionality of the composition of the commission. Consequently the presumption of constitutionality prevails. Upon review of the record before us, we affirm the presiding justice's rulings on those specific discovery matters alleged to be in error which are on appeal before this court.

The procedural facts leading to this appeal are not in dispute. On January 6, 1995, the commission served Chief Judge Arrigan with a Notice of Institution of Public Proceedings (the notice), alleging that Chief Judge Arrigan had violated certain provisions of the Code of Judicial Conduct. Specifically, the notice charged Chief Judge Arrigan with (1) improper "solicitation of contributions and 'sponsorships' for the Eastern Association of Workers' Compensation Boards and Commissions * * * conference held in June, 1992, and [improper] sale of goods and services on behalf of various charitable organizations to attorneys while they were present in [the Workers' Compensation Court] in the course of their professional work" and (2) participation in improper ex parte communications with insurance companies who frequently appeared in court on behalf of their insureds in violation of canon 3B(8) of the Code of Judicial Conduct.

Chief Judge Arrigan had previously filed upon the commission several motions (1) to compel the production of documents, (2) to compel answers to interrogatories, and (3) a motion for specification of charges. In response the commission filed a motion for a protective order regarding Chief Judge Arrigan's deposition notice served upon a commission member, Attorney Elaine Giannini (Giannini), and upon a Workers' Compensation Court judge, William G. Gilroy, a former member of the commission. The commission also filed a motion to quash a deposition notice and subpoena notice served upon Giannini.

On December 16, 1994, the presiding justice held a hearing on the motions and denied Chief Judge Arrigan's motions to compel. The presiding justice also denied the commission's motion to quash the subpoena for the deposition of Giannini. However, the presiding justice granted the commission's request for a protective order limiting the scope of questioning with regard to the deposition of both Giannini and Judge Gilroy.

On March 14, 1995, after conducting a public hearing, the commission issued its report and recommendation regarding its charges against Chief Judge Arrigan. The commission found that Chief Judge Arrigan had engaged in solicitations for charitable and other purposes in violation of the Code of Judicial Conduct, specifically, canons 2B, 4C(3)(b)(i), 4C(3)(b)(iv), and 4D(1)(a). The commission further found that Chief Judge Arrigan had held ex parte meetings in violation of canon 3B(8). The commission there-

fore recommended that Chief Judge Arrigan receive, *inter alia,* a three month suspension without pay and without state-paid fringe benefits. Chief Judge Arrigan's petition for writ of certiorari was thereafter granted by this court on April 13, 1995.

On certiorari to this court Chief Judge Arrigan argues that the composition of the commission pursuant to G.L.1956 (1985 Reenactment) § 8–16–1(a), as amended by P.L. 1991, ch. 205, § 1 is unconstitutional and violates article 5 of the Rhode Island Constitution, which expressly states that "[t]he powers of the government shall be distributed into three departments: the legislative, executive and judicial." Here § 8–16–1(a) provides that "[t]he commission shall consist of fourteen (14) members * * * three (3) of whom shall be members of the general assembly, two (2) to be appointed by the speaker of the house of representatives, one of whom shall be from the minority party; and one to be appointed by the majority leader of the senate * * * ." Chief Judge Arrigan argues that the Legislature's appointment powers found in § 8–16–1(a) are powers impermissibly assumed by the Legislature because such powers pertain exclusively to the judiciary's function of supervision of members of the judicial branch. By placing members of the Legislature on the commission, Chief Judge Arrigan argues, the Legislature has impermissibly infused itself into the operation of the judicial branch. Chief Judge Arrigan therefore contends that the appointment of members of the Legislature to the commission "is an egregious violation of the separation of powers principle [found in article 5 of the Rhode Island Constitution] which requires dismissal of [the commission's] proceedings."

The commission, on the other hand, argues that the composition of the commission pursuant to § 8–16–1(a) does not violate the separation-of-powers doctrine. The commission contends that it is merely an investigative arm of this court and makes only nonbinding recommendations to it; the commission does not have the authority to enforce its determinations. Rather, this court retains the ultimate power in determining whether to accept or to reject the commission's findings.

■ As previously noted, the court, evenly divided on the constitutionality of the composition of the commission, finds that the presumption of constitutionality prevails. *See Gibbons v. Gibbons,* 619 A.2d 432, 434 (R.I. 1993) (since the court was equally divided on the propriety of the general master's valuation of a professional practice in a divorce proceeding, the findings of the general master were affirmed). Although the members of this court have reservations concerning the presence of members of the Legislature on the commission, this reservation does not extend to, nor should it be interpreted as a reservation on the part of this court with respect to, members of the Legislature on other commissions created by the Legislature. The constitutional validity of the commission is therefore upheld, and its proceedings are deemed to be valid in the instant case.

In addition to his constitutional challenge to the composition of the commission, Chief Judge Arrigan also asserts error in regard to the presiding justice's rulings on certain discovery matters. First, Chief Judge Arrigan argues that the presiding justice erred in granting the commission's motion for a protective order limiting the scope of the deposition of Judge Gilroy and Giannini. Second, Chief Judge Arrigan argues that the presiding justice erroneously denied his motions to compel the commission to answer his interrogatories and to produce certain documents.

Rule 17 of the Rules of the Commission on Judicial Tenure and Discipline permits Chief Judge Arrigan "to conduct discovery in the same manner as litigants in civil cases in the Superior Court." In regard to discovery matters governed by Rule 26(b)(2) of the Superior Court Rules of Civil Procedure, we have stated that the burden is upon the party seeking the discovery to show that the " 'denial of production or inspection will result in an injustice or undue hardship.' " *Fireman's Fund Insurance Co. v. McAlpine,* 120 R.I. 744, 754, 391 A.2d 84, 90 (1978). We have "repeatedly stated that a trial justice's handling of discovery matters will be accorded broad discretion and is reviewable only for

an abuse of discretion." *Kirios v. Arsenault*, 632 A.2d 15, 17 (R.I.1993). There is no indication in the record before us which persuades us that Chief Judge Arrigan was unduly prejudiced or that the presiding justice abused his discretion in denying the motions to compel interrogatory answers and to compel responses to document requests from the commission or in granting a protective order limiting the scope of the deposition of Judge Gilroy and Giannini.

We first note that the presiding justice's decision to grant the commission's protective order is in accordance with the Rules of Judicial Tenure and Discipline. Specifically, Rule 13 of the Rules of Judicial Tenure and Discipline states that the commission "shall conduct *closed meetings for the discharge of all its business* other than public hearings held pursuant to Rule 15." (Emphasis added.) Where, as here, a public hearing is held pursuant to Rule 15, Rule 19 specifically states that "[w]ithin ten (10) days after receiving a written request from the respondent, the Commission shall furnish the respondent with the names and addresses of all witnesses whose testimony it expects to be offered at the public hearing in support of the charges together with copies of all written statements and transcripts of testimony of such witnesses that are in the possession of the Commission and are relevant to the charges." Because Rule 19 clearly enumerates the type of information that must be given to a respondent upon his or her request, a respondent is not entitled to any information regarding the commission's closed meetings for the discharge of all its business pursuant to Rule 13.

■ Although Chief Judge Arrigan argues extensively that the commission's proceedings are not protected by the deliberative-process privilege[1] and therefore must be subjected to his discovery requests, we do not now decide on the issue of whether the commission's proceedings are protected by a deliberative-process privilege. Rather, our opinion today is based on the clear and

unambiguous meaning of Rule 13, which provides that the commission's meetings, other than public hearings held pursuant to Rule 15, shall be conducted in a *closed* setting. *See D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374 (R.I. 1992) ("[a]bsent a contrary intent the words in the statute must be given their plain and ordinary meaning * * * [f]urthermore, in construing the statute, we must adopt a construction that does not effect an absurd result"). The presiding justice in the present case therefore properly found that "any *communications* [Giannini or Judge Gilroy] may have had *with members of the Commission* concerning the charges against [Chief Judge Arrigan] or * * * any of [Giannini's or Judge Gilroy's] *activities in connection with his or her services as a Commission member*" were "beyond what is available and required under the Rules of Civil Procedure and the information for other reasons of confidentiality, privilege * * * should [not] or cannot be made available to [Chief Judge Arrigan]." (Emphasis added.) Clearly, in accordance with the aforementioned rules, the presiding justice correctly prohibited Chief Judge Arrigan from discovering any information connected with communications among commission members or with their individual services as commission members.

■ Moreover, in accordance with Rule 17, the presiding justice did not prohibit Giannini and Judge Gilroy from testifying about other relevant matters, such as information they may have had that was unrelated to their service to the commission. It should be noted that, with respect to Giannini's deposition, Chief Judge Arrigan was in fact able to question Giannini concerning her knowledge of the charges. Moreover, in his brief to this court Chief Judge Arrigan argues that Judge Gilroy's testimony could be important in part because of the fact that he occupied the office adjoining Chief Judge Arrigan's office at the Workers' Compensation Court "which afforded daily opportunity to observe and corroborate or contradict

---

1. Both parties refer to the deliberative-process privilege as a privilege found in the Freedom of Information Act, 5 U.S.C. § 552(b). This privilege protects the internal deliberations of an

agency in order to safeguard the quality of agency decisions. *See Town of Norfolk v. United States Army Corps of Engineers*, 968 F.2d 1438, 1458 (1st Cir.1992).

what other witnesses testified about the charges." However, despite the fact that the protective order in question did not prohibit Chief Judge Arrigan from questioning Judge Gilroy concerning such matters, the record reflects that Chief Judge Arrigan did not depose Judge Gilroy and did not call him as a witness at the hearing. In these circumstances we cannot state that Chief Judge Arrigan was unduly prejudiced or that the presiding justice abused his discretion in granting the commission's request for a protective order.

Chief Judge Arrigan nevertheless argues that the presiding justice erred in granting absolute testimonial privilege to Giannini and Judge Gilroy. Chief Judge Arrigan contends that "[n]ew privileges that have evolved have been qualified rather than absolute, with courts looking at factors such as the type of case, the probative value of the evidence as to which the privilege claim is asserted, the availability of other evidence, and the societal interests at stake." Relying on *State v. West Virginia Judicial Review Board*, 264 S.E.2d 168 (W.Va.1980), Chief Judge Arrigan argues that the court refused to grant absolute immunity to the members of the Judicial Inquiry Commission and held that the protective order prohibiting any discovery involving the commission's chair was unnecessarily broad. The court, however, stated that "[c]ertainly the Judicial Review Board can narrow the scope of the deposition to protect against undue harassment * * * ." *Id.*

Here, the presiding justice did not grant a broad protective order, nor did he forbid the taking of Giannini's and Judge Gilroy's depositions on the grounds of absolute privilege. Rather, the presiding justice provided only that Chief Judge Arrigan may not obtain any information pertaining to communications with members of the commission or activities pertaining to their individual services as commission members. In fact, as stated previously, the presiding justice allowed Chief Judge Arrigan to depose both Giannini and Judge Gilroy on any matter relevant to the charges asserted against him.

Finally, Chief Judge Arrigan argues that the presiding justice erred in denying his motions to compel the commission to comply with his discovery requests. It should first be noted that his discovery requests upon the commission have not been provided to this court in the instant case. We are therefore limited to the record before us, which includes, in relevant part, the presiding justice's decision relating to Chief Judge Arrigan's discovery requests upon the commission. Upon reviewing the record before us, we are persuaded by the presiding justice's findings that there are no rules of the commission or rules of the Superior Court Rules of Civil Procedure which would compel the commission to answer, under oath, Chief Judge Arrigan's proposed questions. However, as previously stated, Rule 19 of the Rules of Judicial Tenure and Discipline specifically enumerates the information which must be provided to a respondent upon his or her request.

■ Here neither party has alleged that the commission failed to comply with the specific requirements set forth in Rule 19. In fact, the presiding justice found that the information sought from the commission was available through the commission's listed witnesses and other third party sources. Chief Judge Arrigan has not disputed the presiding justice's findings that the requested information from the commission was otherwise available from the commission's witnesses; hence, we are not persuaded that Chief Judge Arrigan was unduly prejudiced or that the presiding justice abused his discretion in denying his motions to compel.

Accordingly, after hearing the arguments of counsel and reviewing the memoranda the parties submitted, we find from the record before us that the composition of the commission is constitutional and that the charges of alleged error on the part of the presiding justice are without merit. The writ of certiorari previously issued is quashed. We remand the papers of the case to the commission with our decision endorsed thereon.