In re COMMISSION ON JUDICIAL
TENURE AND DISCIPLINE.

No. 2003–512–M.P.

Supreme Court of Rhode Island.

Feb. 28, 2007.

Diane Daigle, Esq., Providence, for Plaintiff.

Paula Rosin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court, pursuant to the petition of Robert K. Pirraglia (Judge Pirraglia or petition-

er), an associate judge of the Rhode Island District Court, requesting the Court to reject the report and recommendation of the Commission on Judicial Tenure and Discipline (commission) that found him to be in violation of several Canons of the Code of Judicial Conduct, Article VI of the Supreme Court Rules. Having reviewed the report and recommendation and the briefs submitted on behalf of the petitioner and the commission, we accept the findings in part, but reject the recommendation.

## Facts and Travel

The commission is charged with investigating, *inter alia,* complaints of violations of the Code of Judicial Conduct (code) and, in appropriate cases, after a public hearing, making findings and recommendations to this Court. On October 10, 2002, the commission received a complaint that alleged improper judicial behavior on the part of petitioner. In accordance with G.L.1956 § 8–16–4(c), after a preliminary investigation, the commission filed a notice of investigation setting forth the nature of the allegations against petitioner, and it scheduled a public hearing. Discovery ensued, and eventually a public hearing was held on June 19, 2004. On November 24, 2004, the commission issued a finding of violation and concluded that petitioner had violated certain provisions of the code. On December 16, 2004, the commission filed with this Court its full report and recommendation finding a violation of several canons and recommending a sanction of censure. Under § 8–16–7, it is the function of this Court to review the report of the commission and to affirm, modify, or reject the recommendation of the commission in a written decision "published in the same manner as other decisions of the [S]upreme [C]ourt."

The facts are not in dispute. On August 26, 2002, a defendant identified as Patrick Sprague (defendant or Sprague), appeared before petitioner in Newport District Court in connection with an outstanding bench warrant that had been issued for his failure to appear in court to pay court costs and fines stemming from several criminal convictions. This defendant's criminal history, his failure to pay and his failure to appear represent a continuing and discouraging aspect of the judicial function—the repeated arrest and presentment of individuals who do not appear and pay fines and costs.

The record discloses that Sprague had a long history of driving offenses and other crimes, including multiple convictions for drunk driving and operating a motor vehicle with a suspended license. Sprague's unpaid costs and fines totaled $3,224. He had failed to appear in court on several occasions, notwithstanding written notices to do so. Judge Pirraglia reviewed Sprague's criminal history and engaged in a colloquy with Sprague that included a proposed disposition. Judge Pirraglia suggested that Sprague admit to being in contempt of court because of his past failures to appear and that he receive a six-month jail sentence. In exchange, the amount he owed the court would be eliminated. During this dialogue, an obviously reluctant Sprague asked whether he could speak to a member of the Public Defender's office. Judge Pirraglia acquiesced to this request, but warned Sprague that he would not allow the offer to remain open should Sprague seek counsel. Sprague accepted the offer without conferring with an attorney, and petitioner sentenced Sprague to a period of incarceration without the benefit of counsel.

Although Sprague neither appealed from the disposition nor complained to the commission, on October 10, 2002, John Hardiman, the Public Defender, filed a complaint with the commission, alleging that Judge Pirraglia had denied Sprague

his constitutional rights. Judge Pirraglia responded to the complaint, denied the allegations, and ultimately exercised his right to have the issue decided after a public hearing. After petitioner and several witnesses testified and documentary evidence was received, the commission issued the report and recommendation that is the subject of this petition.

The commission issued the following findings of fact:

"1. On August 26, 2002, Patrick Sprague (hereinafter 'defendant'), appeared before Judge Pirraglia in Rhode Island District Court on an April 14, 2000, bench warrant that had been issued for defendant's failure to pay a number of fines.

"2. [Petitioner] displayed partiality during his encounter with defendant by[,] *inter alia,* advising defendant that he had gotten 'two bites of the apple' and noting that defendant would have gone to jail a long time ago if he had appeared before the Judge.

"3. [Petitioner] threatened to treat defendant more harshly at sentencing if he chose to exercise his right to speak to an attorney and his right to a hearing.

"4. [Petitioner] denied defendant's request to speak to an attorney before entering a plea agreement with the Court.

"5. [Petitioner] unduly coerced the defendant into accepting a plea agreement without the benefit of counsel by threatening a harsher sentence if the defendant exercised his right to speak with an attorney. [Petitioner], thereby, acted more in the role of a prosecutor rather than an impartial jurist.

"6. [Petitioner] fails to recognize the severity of denying an individual the right to an attorney prior to the entry of a plea agreement."

The commission found that petitioner had engaged in threatening behavior and that his actions were "coercive, prosecutorial, and a violation of [Sprague's] constitutional rights[.]" Based on these findings, the commission concluded that petitioner violated Canons 2A, 3B.2., 3B.8., and 3B.9. of the code.[1] The commission unanimously recommended that this Court censure petitioner. Under § 8–16–6, petitioner filed a petition to reject the recommendation of the commission, arguing that his conduct did not rise to the level of judicial misconduct.

## Issues Presented

The petitioner raises several procedural challenges to the commission's practices, as well as disputing its findings and recommendations. Specifically, he contends that

---

1. Canon 2A of Article VI of the Code of Judicial Conduct of the Supreme Court Rules provides that: "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Canon 3B.2 provides that: "[a] judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor or fear of criticism."

Canon 3B.8 provides that:

"[a] judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding * * *." (Exceptions omitted.)

Canon 3B.9 provides that: "[a] judge shall dispose of all judicial matters promptly, efficiently and fairly."

his due process rights were violated by the commission's practice of appointing a subcommittee to conduct a preliminary investigation and then allowing the members of the subcommittee to participate in the public hearing as well. He also argues that he was denied appropriate discovery into the commission's internal practices. The petitioner also denies that his conduct amounted to violations of Canons 2A., 3B.2., 3B.9., and 3B.8. Finally, petitioner contends that even if his actions amounted to legal error—which he disputes—a single instance of legal error by a judicial officer does not constitute judicial misconduct.

### Due Process

■ The petitioner contends that the procedures utilized by the commission, which were derived from chapter 16 of title 8 and the commission's rules and regulations, deprived him of his right to due process. Judge Pirraglia alleges that a member of the commission who participated in the preliminary investigation should be disqualified from participating in an adjudication on the merits. Because the preliminary investigation must result in a finding of "substantial evidence" to warrant formal charges, petitioner argues that those members of the commission who participated in the preliminary phase of the proceeding had "already determined that there exist[ed] sufficient evidence to sustain the charges against a respondent judge." According to petitioner, this procedure results in an unconstitutional integration of the investigatory and adjudicative roles of the commission.

Additionally, Judge Pirraglia propounded interrogatories relative to this contention, but that attempt at discovery was rebuffed by the Presiding Justice of the Superior Court, who, citing this Court's opinion in *In re Commission on Judicial Tenure and Discipline*, 670 A.2d 1232 (R.I. 1996), declared that petitioner is not entitled to any information concerning the commission's closed meetings for the discharge of its business. The Presiding Justice also addressed petitioner's argument that the procedures violated his due process rights, and found no merit in the contention that those members who participated in a preliminary investigative inquiry should be disqualified from participating in a later adversary hearing.

### Analysis

■ It is undisputed that a citizen is guaranteed a hearing before an administrative body that is not biased or whose members are "otherwise indisposed from rendering a fair and impartial decision." *La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights*, 419 A.2d 274, 283 (R.I.1980) (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). However, the mere existence of a combination of "investigatory, inquisitorial, and adjudicative roles in a single administrative body" does not amount to a denial of due process or signify that the agency's structure or operations is subject to constitutional attack. *La Petite Auberge, Inc.*, 419 A.2d at 284. To challenge an administrative adjudication based on an amalgamation of incompatible functions, a party "must show that the procedures 'pos[e] such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).

As for the individual members of such an administrative body, however, this Court has never suggested that such members of an administrative body "may involve themselves directly in either the preparation or the prosecution" of an ad-

ministrative action because "[s]uch activities would raise constitutional issues of a wholly different order." *La Petite Auberge, Inc.*, 419 A.2d at 284. We have recognized that the procedures employed in a modern administrative agency that allots "the prosecutorial function to a staff of attorneys or other personnel who will not participate in the eventual decision, is a common and recommended feature of American administrative enforcement activity." *Id.* This Court is of the opinion that the commission is designed in such a way that complaints against judges are addressed fairly and expeditiously by an unbiased tribunal of limited authority that has been organized in accordance with state law.

We note that *all actions,* including a finding of substantial evidence, must be taken by a majority vote of the members of the commission. Under § 8–16–4(b), the commission, "upon receiving from any person a verified statement, not unfounded or frivolous, alleging facts indicating that a [judicial officer] * * * is guilty of a violation of the [Code of Judicial Conduct] * * * shall make a preliminary investigation to determine whether formal proceedings shall be instituted and a hearing held." Thus, the commission itself, and not a committee appointed by the chairperson, is vested with the responsibility of deciding whether substantial evidence exists to support formal charges and a public hearing. Section 8–16–4(c). We deem these procedures to be unambiguous and fair.

The members of the judiciary are cognizant of the lamentable fact that dissatisfied litigants, including those accused of criminal offenses and parties embroiled in domestic disputes, sometimes make baseless complaints against judges, which all too often arise from a decision that was rendered in fulfillment of one's judicial responsibilities. Therefore, Rule 11 of the Rules of the Commission on Judicial Tenure and Discipline (rules) provides that "[a] complaint that a majority of the members of the [c]ommission in attendance finds, on its face, to be unfounded or frivolous shall be dismissed * * *." Accordingly, only those complaints that are not unfounded or frivolous shall be subjected to a preliminary investigation, by a committee appointed by the chairperson. *See* Rule 12 of the Rules of Judicial Tenure and Discipline. Formal proceedings can only be commenced after a finding *by the commission* of substantial evidence to support the charges. *See* § 8–16–4(c). We are of the opinion that these procedures ensure expeditious review of complaints of judicial misconduct while safeguarding the rights of judges and their judicial independence.

 Furthermore, unlike many quasi-judicial bodies, the commission's role is restricted to making recommendations to this Court. Upon a finding of judicial misconduct, it is the responsibility of the commission to recommend a sanction including, but not limited to, censure, suspension, or removal from office. *See* § 8–16–4(e). We have steadfastly held that the authority of this Court to discipline judges is plenary and exclusive. *See In re Lallo,* 768 A.2d 921, 925 (R.I.2001) (holding that the authority of the Supreme Court to discipline judges and members of the bar is plenary) (citing *In the Matter of Almeida,* 611 A.2d 1375, 1381–82 (R.I.1992)). We exercise that power based on recommendations made by the commission in its report to this Court. *See In re Lallo,* 768 A.2d at 925. Save for the imposition of a private reprimand for a violation that is not of a serious nature, § 8–16–4(d), the commission's decisions are not final and significantly, the commission lacks any enforcement authority. Because the com-

mission is limited to recommending a specific remedy, this Court is obligated to conduct its own evaluation of the evidence adduced by the commission and reach an independent conclusion about what sanction, if any, should be imposed. Accordingly, we respectfully reject petitioner's argument that the procedures of the commission resulted in a merger of investigatory, prosecutorial and adjudicatory functions such that his right to due process was denied.

## Entitlement to Discovery

The petitioner also appeals the denial of his motion to compel more responsive answers to his requests for discovery. The declared purpose of these requests was to ascertain which commission members participated in the preliminary investigation; petitioner also propounded certain "contention interrogatories." This Court previously denied a petition for writ of certiorari seeking review of a ruling by the Presiding Justice of the Superior Court, who denied this requested discovery on the ground that there was no merger of the prosecutorial and adjudicative functions of the commission. Because we continue to agree with this reasoning, we see no reason to revisit this issue.

## Commission's Findings of Fact

■ The petitioner challenges the commission's findings of fact and argues that the findings were erroneous. After careful review of the record in this case and the colloquy between petitioner and Sprague, we are of the opinion that the commission conducted a thorough investigation and public hearing and we are grateful for the commission's efforts. Although we are satisfied that the commission's findings were supported by the evidence, we are also persuaded that certain of its conclusions were overly broad and implied the existence of behavior that we do not discern on the record before us. To that extent, the findings are modified.

The petitioner contends that the commission failed to recognize that Sprague had been apprehended not only for failure to pay fines, but also because he failed to appear in court when ordered to do so. Secondly, petitioner denies that he displayed partiality or threatened "to treat defendant more harshly at sentencing if he chose to exercise his right to speak to an attorney and to exercise his right to a hearing." The petitioner disputes the finding that he "unduly coerced the defendant into accepting a plea agreement without the benefit of counsel[.]" He also challenges the finding that he "acted more in the role of a prosecutor rather than an impartial jurist" and denies that he failed "to recognize the severity of denying an individual the right to an attorney prior to the entry of a plea agreement."

We note that at the time of his appearance, Sprague was forty-one years old, had been before the District and Superior Courts numerous times, and had a long criminal record that was exacerbated by his failure to appear and pay fines and court costs totaling $3,224. Defendants such as Sprague, who repeatedly fail to appear and pay costs and fines, constitute a difficult and often frustrating obligation upon judicial officers seeking to carry out their duties. Indeed, the commission recognized "the high volume of cases involving delinquent fines that pass through the District Court and the difficult task facing the judiciary in handling these cases." Nevertheless, the commission concluded, and we concur, that the constitutional rights of these arrestees, who are not accused of new offenses but have been apprehended on costs warrants, cannot be compromised. Like any other citizen, Sprague was entitled to a fair proceeding by an impartial judicial officer.

We agree with the commission's finding insofar as Judge Pirraglia's comments gave rise to a perception of some degree of partiality toward defendant when he declared that, if Sprague had appeared before him earlier, he would have already been in prison. Based on the totality of the circumstances, we are satisfied that petitioner appeared to prejudge Sprague on the basis of his criminal record. He also erred when he declared that if Sprague exercised his right to counsel the offer would be withdrawn. The commission has characterized petitioner's actions as "condition[ing] the plea agreement on [Sprague's] waiver of his right to counsel[.]" Although this is an exaggeration of petitioner's exchange with Sprague, he should not have imposed a sentence of incarceration in the absence of counsel, without record proof of a knowing and intelligent waiver of the right to counsel. Because Sprague had a right to counsel, there should have been no suggestion that he could suffer a disability for exercising that right. This constitutes legal error and an abuse of discretion.

The United States Supreme Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense * * * unless he was represented by counsel * * *." *Alabama v. Shelton*, 535 U.S. 654, 662, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) (quoting *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)); *see also State v. Bluitt*, 850 A.2d 83, 88–89 (R.I.2004) (holding that trial judges must be satisfied that an accused is making a knowing, voluntary and intelligent waiver of counsel, having been advised of "the dangers and disadvantages of self-representation," such that there is a record demonstration that an accused elected to proceed without counsel "with eyes open") (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).

■ Although we commend the commission for its work in this case, we respectfully disagree with its finding that petitioner engaged in threats or coercive conduct as those terms are recognized in our judicial lexicon. A threat is defined as a "communicated intent to inflict harm or loss on another or on another's property, esp[ecially] one that might diminish a person's freedom to act voluntarily or with lawful consent[.]" Black's Law Dictionary 1519 (8th ed.2004). At no point did petitioner's statements to Sprague rise to the level of threats.[2] Further, we respectfully disagree that petitioner was "unduly coercive." To coerce implies the use of force or threats and we are not satisfied that petitioner's conduct rose to the level of coercion.[3] The petitioner was not rude or

**2.** The word "threat" has a particular meaning in our jurisprudence, a meaning that simply is not present in any of the language used by Judge Pirraglia. For example, in the context of extortion, we have previously adopted the United States Supreme Court's definition of genuine threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *State v. Grayhurst*, 852 A.2d 491, 515 (R.I.2004) (quoting *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003)). Similarly, we previously have held that even an idle threat, one that amounted to a "thoughtless and toothless warning uttered in the midst of an emotional harangue[,]" included a forewarning of physical violence. *State v. McKenna*, 415 A.2d 729, 730 (R.I.1980).

**3.** The term "coercion" also has a specific denotation in our law that is not manifested in any of the actions or words used by Judge Pirraglia. For example, in the context of our Sexual Assault Statute, G.L.1956 § 11–37–1(2)(iii) and (iv), a person "coerces" another "by threatening to use force or violence" or "by threatening to at some time in the future murder, inflict serious bodily injury upon or kidnap * * *." While such coercion may be by way of an implied threat, *see, e.g., State v.*

abusive or arrogant or aggressive, nor did his conduct exceed the bounds of judicial propriety. *See, e.g., In re O'Brien,* 650 A.2d 134 (R.I.1994) (holding that multiple instances of arrogant and abusive conduct warranted a public censure). We are mindful that we are confronted with a single case that arose during the course of a long and distinguished judicial career.

Judge Pirraglia argues that a finding of judicial misconduct should not rest on a single instance of legal error. In reviewing a judge's actions on the bench, courts have distinguished between legal error and ethical misconduct. Many courts that have addressed this issue have concluded that "'mere legal error' is insufficient to support a finding of ethical misconduct." *In re Curda,* 49 P.3d 255, 258 (Alaska 2002) (quoting *Oberholzer v. Commission on Judicial Performance,* 20 Cal.4th 371, 84 Cal.Rptr.2d 466, 975 P.2d 663, 680 (1999)). We note that the majority of cases cited by both petitioner and the commission concerning judicial misconduct based on legal error resulted from multiple instances of misconduct and involved more than a single litigant. *See Matter of Benoit,* 487 A.2d 1158, 1162–63 (Me.1985) (holding that "[s]omething more than a mere error of law is required to constitute misconduct"); *see also In re Scott,* 377 Mass. 364, 386 N.E.2d 218, 221 (1979) (holding that a judge committed misconduct when, for six years, she followed a course of judicial conduct that violated the legal and constitutional rights of the parties appearing before her).

■ We agree with the Maine Supreme Judicial Court that not every error of law, even an error that a reasonable and competent judge would avoid making, automat-

ically deserves discipline. *Matter of Benoit,* 487 A.2d at 1163.

■ To safeguard the independence of our judiciary, we take this opportunity to recognize that at times judges err; whether with respect to substantive law, procedural issues, or abuses of discretion, judges make legal mistakes. "Every trial judge will from time to time commit legal errors in decisions later reversed on appeal, but judicial discipline would be in order in almost none of those cases." *Matter of Benoit,* 487 A.2d at 1162. "[L]egal error may amount to judicial misconduct if it is repeated, motivated by bad faith, accompanied by intemperate or abusive conduct, or irremediable by appeal." *In re Curda,* 49 P.3d at 258. In the absence of a finding of bad faith or bias or willful disregard for fundamental rights, a judicial officer who is attempting to faithfully and impartially discharge his or her judicial responsibilities should not be faced with a charge of ethical misconduct for legal error. We are equally confident that the commission appreciates and respects this principle.

■ We agree with the Supreme Court of Alaska that "courts most often find judicial misconduct where judges have repeatedly or willfully denied individuals their rights." *In re Curda,* 49 P.3d at 258. Generally, these cases involve multiple instances of knowing and willful violations that demonstrate a pattern of misconduct or flagrant disregard for individual rights. *Id.* at 258–59. We hasten to add however, that errors of law may constitute ethical misconduct when the error "clearly and convincingly reflects bad faith, bias, abuse of authority, disregard for fundamental rights, intentional disregard of the law, or

*Burke,* 522 A.2d 725, 734–36 (R.I.1987), it nonetheless bears no comparison to any lan-

guage used by Judge Pirraglia.

any purpose other than the faithful discharge of judicial duty." *Id.* at 258. We adhere to these principles.

■ Finally, in determining whether a judge has engaged in judicial misconduct, courts apply a reasonableness test. "[I]f a reasonably prudent and competent judge would consider that conduct obviously and seriously wrong in all the circumstances," the judge's action constitutes judicial misconduct. *Matter of Benoit,* 487 A.2d at 1163, 1162 (holding that a judge's incarcerating defendants for noncriminal matters and detaining a juvenile for six weeks without assistance of counsel and without any evidence warranted censure and suspension).

In the case before us, there is no suggestion that Judge Pirraglia engaged in a course of conduct that violated the rights of those appearing before him. In fact, before the incident with Sprague, petitioner's record was devoid of any complaints of misconduct. However, while petitioner's actions did not rise to the level of threats or coercion, as alleged by the commission, he nonetheless deprived Sprague of the opportunity to consult with counsel before accepting a guilty plea and implied that Sprague would be penalized if he elected to speak to an attorney. *See Marano v. United States,* 374 F.2d 583, 585 (1st Cir. 1967) (holding that an accused "should not have to fear even the possibility" that he or she will suffer a penalty for exercising his or her rights). We are also satisfied that he prejudged the case based on the record before him. Accordingly, we agree with the commission that petitioner violated Canons 2A and 3B.8.

Finally, we pause to note the commission's finding that Judge Pirraglia refused to recognize the severity of his actions and failed to consider that he may have violated the code. The petitioner has continued to maintain that a determination of legal error should be made by an appellate court and not by a finding of judicial misconduct. Although we reject several of the commission's findings as overly broad, we are equally satisfied that a criminal disposition such as occurred in this case was more than legal error.

### Conclusion

We now turn to the question of the appropriate sanction, if any, that should be imposed in the circumstances of this petition. We undertake this analysis grateful for the work of the commission and its careful consideration of the issues raised in this case. We are also cognizant that, after more than twenty years of exemplary judicial service that included tireless efforts to enhance the bench and the bar of this state and other states, the petitioner has retired (for reasons wholly unrelated to this appeal). In light of the petitioner's distinguished service to the judiciary and to the people of our state and because we have modified several of the commission's findings of fact, we decline to impose the sanction of censure.

The papers in this case may be remanded to the Commission on Judicial Tenure and Discipline.