### NARRAGANSETT IMPROVEMENT COMPANY et al.

v.

### Evelyn WHEELER et al.

### No. 2009–88–Appeal.

Supreme Court of Rhode Island.

June 27, 2011.

Michael A. Kelly, Esq., Providence, for Plaintiff.

Michael Rubin, Department of Attorney General, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

Narragansett Improvement Company (Narragansett Improvement), one of three plaintiffs in the underlying action,[1] appeals from a Superior Court judgment in favor of the defendants, members of the Rhode Island Advisory Commission on Historical Cemeteries (advisory commission).[2] The judgment, which was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, emanates from an order granting the defendants' motion to dismiss certain counts of the plaintiffs' complaint. Narragansett Improvement argues before us that the trial justice erred in dismissing these counts because the advisory commission exceeded its authority, under G.L. 1956 § 23–18.3–1, by "identifying" and "registering" certain features on the plaintiffs' property, located in the Town of North Smithfield, as historical cemeteries and by notifying the town as to the same. Narragansett Improvement contends that the advisory commission's actions violated the plaintiffs' procedural and substantive due process rights under the Rhode Island Constitution. Narragansett Improvement further asserts that the trial justice erred by not recognizing a slander of title claim against the defendants. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

1. The original plaintiffs are Narragansett Improvement, UBS Realty, Inc., and Rankin Path Realty, LLC; however, only Narragansett Improvement timely appealed.

2. The individual members named as defendants in the complaint are Evelyn Wheeler, in her capacity as chairperson of the advisory commission, Pegee Malcolm, in her capacity as co-chairperson of the advisory commission, and Edna Kent, Roger Beaudry, Carolyn Crist, Robert Butler, Paul Robinson, Rosemarie Mello, Judy Fardig, Bruce MacGunnigle, Ron Onorato, Sarah Small, Daniel Evangelista, and Lee Teverow, in their capacities as members of the advisory commission.

## I

### Statutory Framework

Before setting forth the facts of this case, it may be beneficial to review the relevant statutory background. In 1991, the General Assembly enacted chapter 18.3 of title 23, thereby creating the advisory commission. Section 23–18.3–l(a) provides that the advisory commission was "created [as] a permanent advisory commission to *study* the location, condition, and inventory of historical cemeteries in Rhode Island and to *make recommendations* to the general assembly relative to historical cemeteries in Rhode Island." (Emphases added.) The plain language of chapter 18.3 of title 23 does not vest the advisory commission with the power to determine which parcels of property constitute historical cemeteries, nor with the authority to register historical cemeteries.

A separate chapter of the General Laws, however, G.L.1956 chapter 18 of title 23, does deal with the registration of historical cemeteries. Section 23–18–11(c) states, in pertinent part, as follows:

"Whenever an unmarked cemetery or human skeletal material is inadvertently located during any construction, excavation, or other ground disturbing activity, * * * the building official of the city or town * * * shall be immediately notified. The building official shall, in turn, notify the state medical examiner and the Rhode Island historical preservation and heritage commission if the grave, cemetery, or skeletal material appears to be historic. Prior to the continuation of any further construction, * * * the property owner shall undertake an archaeological investigation to determine the boundaries of the unmarked cemetery and shall so inform the building official. In the event that the cemetery meets the criteria for a historic cemetery, the building official shall so advise the *recorder of deeds* of the city or town who *shall record and register the cemetery* in accordance with the provisions of § 23–18–10.1." (Emphases added.)

Section 23–18–10.1, in turn, requires "the *recorder of deeds* in every city and town [to] *record* with an appropriate symbol *all historical cemeteries* located within the city or town, and [to] *register these historical cemeteries* on an official tax plat or similar instrument." (Emphases added.) Therefore, under this statutory regimen, it is the recorder of deeds of a city or town, and not the advisory commission, who registers historical cemeteries located in that city or town.

## II

### Facts and Procedural History

We now turn to the pertinent facts of this case.[3] The plaintiffs, Narragansett Improvement, UBS Realty, Inc., and Rankin Path Realty, LLC, are owners of property (the property) in North Smithfield. In November 2005, plaintiffs filed, with the North Smithfield Planning Board (planning board), a master plan application for a major land development project on the property. From September 2006 to August 2007, the planning board reviewed plaintiffs' application, including the issue of "whether the stone mounds found on the proposed site were burial mounds containing the remains of American Indians."[4]

The planning board was not the only governmental body concerned with plaintiffs' application for land development. In

---

**3.** We garner a good portion of these facts from the "Findings of Fact & Decision" of the North Smithfield Planning Board.

**4.** This issue initially arose in 2001, during the planning board's review of plaintiffs' previous application for land development.

November 2006, Donald Gagnon, chairperson of the North Smithfield Conservation Commission (conservation commission), initiated e-mail contact with Evelyn Wheeler, chairperson of the advisory commission, concerning the possible presence of American Indian burial grounds on the property.[5] E-mail communications between Mr. Gagnon and members of the advisory commission stretched over a period of about six weeks.

Then, in April 2007, the North Smithfield Town Council (town council) held a meeting, during which Mr. Gagnon presented Frederick F. Meli, Ph.D., an anthropologist and archaeologist.[6] Doctor Meli informed the town council that he had studied the land that plaintiffs planned to develop and had found "significant historical artifacts and mound piles that [he] * * * thought * * * contain[ed] the remains of American Indians." Thereafter, the town council unanimously approved a motion requesting that Dr. Meli, along with the conservation commission, "begin the process of defining and protecting the area [in question] and present it to the [p]lanning [b]oard for their review." The council also approved a motion to "[r]efer this matter to the [p]lanning [b]oard for the purpose of recommending that no permit or further authority for construction, excavation or other ground disturbing activity * * * be permitted * * *." Subsequently, in May 2007, the town council

hired Dr. Meli "to conduct an archaeological study of a site adjacent to the proposed [development] site." [7]

The planning board, as part of its review process of plaintiffs' application for land development, held four informational meetings between December 2006 and August 2007. At a meeting on August 2, 2007, the planning board received the testimony of Ms. Wheeler. Ms. Wheeler, testifying on behalf of the advisory commission, provided the board with a letter, dated June 27, 2007, that she had sent to the conservation commission, which stated that the advisory commission "ha[d] been informed by the Providence County Commissioner [of the advisory commission], Edna Kent, of the two (2) new cemeteries which ha[d] been registered with the RI Historical Cemetery Database as NS 52 and NS 53." Ms. Wheeler confirmed for the planning board that, indeed, two cemeteries "were identified and registered." [8] Doctor Meli also testified at the August 2, 2007 meeting. After the board "voted to accept Dr. Meli as an expert to provide information on the identification of the stone mounds found throughout the proposed subdivision," he testified that he was "95% certain that the stone mounds observed on the proposed [development site] are burial mounds due to the composition, size and shape of the mounds." Doctor Meli also opined that a Public Archaeological Laboratory (PAL)

5. In one of his e-mails to Ms. Wheeler, Mr. Gagnon wrote that it is the conservation commission's "responsibility to review potential development sites for various environmental and conservation issues," including such sites' "historical and archeological significance."

6. At a later-held planning board meeting, Dr. Meli testified that he spoke before the town council as a "volunteer[,] * * * not [as] a paid consultant."

7. Doctor Meli had not completed the "final written report on his archaeological and anth-

ropological study" by the time the planning board issued its decision with respect to plaintiffs' application for land development.

8. Ms. Wheeler, in a January 30, 2008 deposition, distinguished her use of the term "register" from the way that that term is used in G.L.1956 § 23–18–10.1. She testified that when she said that the advisory commission "register[ed]" cemeteries, she meant that the commission "inventor[ied]" them in a "database."

report that plaintiffs had presented to the planning board, which had concluded that the stone mounds were not burial sites, was "at best cursory." [9]

On August 16, 2007, the planning board unanimously voted to deny plaintiffs' application for development on the land in question, and on November 15, 2007, it issued a written decision.[10] In that decision, the planning board acknowledged receiving plaintiffs' 2001 PAL report, but noted that the report "offer[ed] no reference to historical data, empirical evidence or any other historical records to support [its] conclusions," and that it was not prepared by credentialed authors. The board also noted that the PAL report's authors did not appear before it, and that Dr. Meli, who did testify before the board, critiqued the report at length. For all these rea-

sons, the planning board "[found] the report to be of questionable accuracy" and did not rely on it in making its decision.

On October 24, 2007, while final approval of the planning board's written decision was pending, plaintiffs filed a complaint against defendants in Superior Court, seeking declaratory and injunctive relief, as well as damages. The plaintiffs alleged in their complaint that the advisory commission "registered" historical cemeteries on the property "without providing notice to the [p]laintiffs, without providing the [p]laintiffs with an opportunity to be heard, and without considering the 2001 PAL [r]eport." The plaintiffs asserted that such "registration" was "an abuse of government power." They further alleged that members of the advisory commission entered the property "without the consent,

9. When the issue about the stone mounds on the property initially arose, plaintiffs hired PAL to study the stone mounds, and submitted to the board a 2001 PAL report that "conclud[ed] that the stone mounds were not burial sites."

10. In its unanimous decision to deny Narragansett Improvement's application for master-plan approval, the planning board made the following findings of fact: (1) applicant "failed to correct and/or provide additional information as specified in the [m]aster [p]lan checklist" relative to (a) the "[l]ocation and approximate size of existing buildings or significant above-ground structures"; (b) the "[l]ocation of historic cemeteries within or immediately adjacent to the subdivision parcel(s) (if any)"; (c) the "[l]ocation of any unique natural and/or historic features including stone walls"; (d) the identification on a map of "historic structures, foundations & stone walls viewsheds e.g. views across open fields, water bodies or significant geological features areas adjacent to other protected open space parcels owned by the Town, State or a conservation group." (2) Applicant failed to comply with subdivision regulations with respect to design standards, including the removal of excessive amounts of gravel and materials, the locations of detention

ponds, the grading of streets and lots not in conformance with the natural topography, and the unnecessary disturbance of the natural features of the land. (3) Applicant improperly included later-acquired land in a revised plan in derogation of a consent order. (4) Existing roadways were inconsistently noted and improperly designated on the submitted plan. (5) The planning board also made "[n]egative finding[s]" on each of the five statutory standards, as set forth in G.L.1956 § 45–23–60(a), requiring that "[t]he proposed development is consistent with the comprehensive community plan," that it "is in compliance with the standards and provisions of the municipality's zoning ordinance," that "[t]here will be no significant negative environmental impacts from the proposed development," that the subdivision "will not result in the creation of individual lots with any physical constraints to development that building on those lots according to pertinent regulations and building standards would be impracticable," and that "[a]ll proposed land developments and all subdivision lots have adequate and permanent physical access to a public street." (6) Finally, the planning board found that the proposed subdivision did not comply with the general purposes set forth in § 45–23–30 and in the subdivision regulations.

knowledge or permission of the [p]laintiffs." The plaintiffs also pointed out that chapter 18.3 of title 23, the statute that created the advisory commission, "provides no means of process by which a property owner may be afforded a reasonable opportunity to be heard" or "to appeal a determination made by the [advisory commission] registering a historical cemetery." The complaint contained seven counts: count 1 sought declaratory judgment on a violation, by the advisory commission, of the substantive due process clause of the Rhode Island Constitution; count 2 sought declaratory judgment on a violation of the procedural due process clause of the Rhode Island Constitution; count 3 sought a declaration that chapter 18.3 of title 23 is unconstitutional, both on its face and as applied; count 4 sought a declaration that the "registration" of the historical cemeteries by the advisory commission is null and void; count 5 alleged slander of title; count 6 alleged trespass;[11] and count 7 alleged tortious interference with expected business advantage, opportunity, and expectation.

On December 3, 2007, defendants moved to dismiss counts 1, 2, 3, 4, 5, and 7 of plaintiffs' complaint under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. In a memorandum in support of their motion, defendants asserted that the complaint was "based on [plaintiffs'] major misunderstanding" that the advisory commission "can register historical cemeter-

ies." In fact, defendants pointed out, the advisory commission is a "purely advisory" body with no power to "register" cemeteries. Therefore, defendants argued, "as a matter of law, there can be no such claim against the [advisory c]ommission." On June 24, 2008, plaintiffs responded by objecting to defendants' motion to dismiss and by filing a motion for summary judgment.[12]

A hearing was held before a trial justice on July 8, 2008. At the hearing, defendants asserted that the advisory commission lacks the power to "register[ ]" cemeteries and that, therefore, any such action by the commission in that respect had no "legal operative import."[13] Thus, defendants maintained, any "registration" by the advisory commission was necessarily "symbolic" and not actionable. The plaintiffs agreed with defendants that the advisory commission "has no authority" to register cemeteries, but they nevertheless argued that the commission "exceed[ed] the scope of any of its authority" by sending a letter to the conservation commission "saying that [it had] registered these cemeteries." The plaintiffs also asserted that the advisory commission "intended that the [planning b]oard rely" on such "registration," and that the board did rely on it in denying plaintiffs' application for land development.[14] The plaintiffs also suggested that "as a matter of procedure, * * * this motion to dismiss ha[d] been transformed into a motion for summary

---

**11.** On December 17, 2008, the trespass count was voluntarily dismissed, without prejudice, by plaintiffs.

**12.** The plaintiffs attached numerous exhibits to a memorandum in support of their objection to defendants' motion to dismiss and in support of their motion for summary judgment.

**13.** Both defendants and plaintiffs acknowledged that North Smithfield "registered" the

cemeteries "in the land evidence records." The defendants asserted that it was the town's registration that had the "legal operative effect."

**14.** In response, defendants argued that if the town "took [the advisory commission's] advice as a directive" or otherwise misconstrued or misunderstood its own role, then "an action might lie against the [t]own."

judgment." The trial justice agreed, stating "I guess so, given the volume of exhibits that have been submitted * * *."

The trial justice agreed with the parties that the advisory commission lacks the authority to "register" cemeteries in the land evidence records, and he noted that when members of the commission referred to "registering" the cemeteries in question, they never meant to use the term "register" in a legally operative way.[15] The trial justice reasoned that because the advisory commission serves in an "advisory capacity," no "cause of action of constitutional dimension" can be raised against it. At the end of the July 8, 2008 hearing, the trial justice granted defendants' motion to dismiss.[16]

On December 17, 2008, final judgment was entered pursuant to Rule 54(b).[17] One of the plaintiffs, Narragansett Improvement, timely appealed.

## III

### Standard of Review

The threshold issue before us is the appropriate standard under which we should review this appeal. The Superior Court dismissed six out of the seven counts of plaintiffs' complaint against defendants for failing to state a claim under

Rule 12(b)(6).[18] Before the hearing on defendants' motion to dismiss, however, the trial justice was presented with matters outside the pleading, by way of attachments to plaintiffs' memorandum in support of their objection to defendants' motion to dismiss and in support of their motion for summary judgment. At the July 8, 2008 hearing, these extraneous matters were not excluded by the court. Rule 12(b) provides, in pertinent part, as follows:

"If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [of the Superior Court Rules of Civil Procedure], and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56."

Accordingly, because the trial justice did not exclude matters outside the pleading from his consideration, defendants' motion to dismiss should have been treated as a motion for summary judgment under Rule 56(b).[19] *See DeSantis v. Prelle*, 891 A.2d

---

15. The trial justice reasoned that the advisory commission used the term "register" simply to mean "place[] or register[] the cemetery *on [its] database* as an historical cemetery." (Emphasis added.)

16. An order granting defendants' motion was entered on July 10, 2008.

17. Final judgment was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure because after the dismissal order, on August 15, 2008, plaintiffs filed an amended complaint, adding Dr. Meli as a defendant. Rule 54(b) allows for "the entry of a final judgment as to one or more but fewer than all of the * * * parties." The claims against Dr. Meli remain pending.

18. As stated *supra*, the remaining count was voluntarily dismissed and is not before us.

19. Interestingly, on appeal Narragansett Improvement argues that the trial justice erred by considering the very extraneous material that plaintiffs themselves presented to the lower court. We hold that this argument is waived because plaintiffs did not raise it below. *See State v. Bido*, 941 A.2d 822, 828–29 (R.I.2008); *Bowen Court Associates v. Ernst & Young, LLP*, 818 A.2d 721, 726 (R.I.2003). Moreover, although the trial justice should have entered an order deciding defendants' motion on summary judgment grounds, such an error on the justice's part was harmless because plaintiffs did not suffer any prejudice

873, 876 (R.I.2006); *Elgar v. National Continental/Progressive Insurance Co.*, 849 A.2d 324, 326 (R.I.2004); *Bowen Court Associates v. Ernst & Young, LLP*, 818 A.2d 721, 725–26 (R.I.2003).

 In treating the Superior Court's entry of dismissal for defendants as though it were one of summary judgment, we review Narragansett Improvement's appeal *de novo. See Elgar*, 849 A.2d at 326. This Court will view "the evidence in the light most favorable to the nonmoving party," affirming only if "we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *DeSantis*, 891 A.2d at 877 (quoting *Tanner v. Town Council of East Greenwich*, 880 A.2d 784, 791 (R.I.2005)). Moreover, "the nonmoving party bears 'the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Id.* (quoting *Tanner*, 880 A.2d at 791); *see also Tidewater Realty, LLC v. State of Rhode Island*, 942 A.2d 986, 992 (R.I.2008).

## IV

### Discussion

On appeal, Narragansett Improvement argues that the trial justice should not have dismissed plaintiffs' complaint because the advisory commission exceeded its authority, under § 23–18.3–1, by "identifying" and "registering," in an internal database, certain features on the property as historical cemeteries, and by notifying the town as to the same. Narragansett Improvement acknowledges that "only a municipality has the authority to register a historical cemetery on its plat maps," but it nevertheless argues that the advisory commission overstepped its purely advisory role by "registering" two historical cemeteries "with the intention that doing so would stop the development of [the property]." Narragansett Improvement asserts that these acts by the advisory commission violated plaintiffs' procedural due process rights under the Rhode Island Constitution. Specifically, Narragansett Improvement contends that the advisory commission violated plaintiffs' "constitutionally protected interest" by not affording "notice or an opportunity to be heard." Narragansett Improvement also argues that its substantive due process rights were violated because the advisory commission's actions were "arbitrary and unreasonable." Lastly, Narragansett Improvement asserts that the trial justice erred when he failed to recognize a slander of title claim against defendants.[20]

 This Court has had limited occasion to comment on whether a party has a protected interest in the decisions of a purely advisory governmental body. In *In re Commission on Judicial Tenure and Discipline*, 916 A.2d 746, 748, 749–50, 752 (R.I.2007), this Court rejected the petitioner's violation of due process argument against the Commission on Judicial Tenure and Discipline, a commission "charged

from the fact that the justice instead entered an order dismissing the claims under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. *See Bowen Court Associates*, 818 A.2d at 726–27.

**20.** On appeal, Narragansett Improvement repeatedly references defendants' alleged trespass upon its land. However, as stated *supra*, the trespass count was not before the trial justice at the July 8, 2008 hearing, and it was voluntarily dismissed thereafter by plaintiffs. We therefore find unavailing Narragansett Improvement's assertion that the trial justice erred by "fail[ing] to recognize * * * the [advisory c]ommission's trespass upon the [p]roperty," and we disregard it for purposes of this appeal.

with investigating * * * complaints of violations of the Code of Judicial Conduct * * * [and] making findings and recommendations to [the Rhode Island Supreme Court]." We stated in that opinion that the commission "lacks any enforcement authority," and that it is this Court that has "plenary and exclusive" authority to discipline judges, which we must do by "conduct[ing our] own evaluation of the evidence adduced by the commission and reach[ing] an independent conclusion." *Id.* at 751–52. Thus, we rejected the petitioner's due process argument against the commission. *Id.* at 752.

Other jurisdictions similarly have refused to recognize due process claims against purely advisory governmental bodies. *Parenti v. Ponte*, 727 F.2d 21, 22 (1st Cir.1984), concerned the transfer of a prison inmate to a segregation unit within a prison. The inmate sued, arguing that his due process rights were violated when he was denied an impartial hearing before the Department Classification Board. *Id.* at 22–23. According to the Court of Appeals for the First Circuit, Massachusetts prison regulations did create a certain "liberty interest"; that interest, however, did not encompass a right to exclude a particular member from the Department Classification Board. *Id.* at 25–26. The First Circuit noted that the board "merely makes nonbinding recommendations to the Commissioner [of Corrections]," who is free to approve or disapprove of such recommendations as he deems appropriate. *Id.* at 26. Given this, and "[i]n the absence of any regulation" requiring board members to be impartial or granting inmates the right to exclude certain board members, the First Circuit "decline[d] to read such requirements into the due process clause,"

and it upheld the lower court's dismissal of the inmate's complaint. *Id.*

Similarly, the Court of Appeals for the Tenth Circuit, in *Velasco–Gutierrez v. Crossland,* 732 F.2d 792, 793, 798 (10th Cir.1984), held that the refusal of the district director of the Immigration and Naturalization Service to consider the plaintiffs, illegal immigrants, for "deferred action status" did not implicate a liberty interest within the meaning of the due process clause. The Tenth Circuit pointed out that the district director "can only *recommend* consideration for deferred action status," and that the regional commissioner "is free to accept or reject the district director's recommendations for any reason." *Id.* at 797, 798. Therefore, according to the Tenth Circuit, any "limitations * * * place[d] on the district director's discretion, and any expectancy [they] thereby create[ ], are * * * too remote and insubstantial to rise to the level of a constitutionally protected liberty interest." *Id.* at 797.

In the case at bar, the advisory commission was "created * * * to study the location, condition, and inventory of historical cemeteries in Rhode Island and to make recommendations to the general assembly relative to historical cemeteries in Rhode Island." Section 23–18.3–1(a). Therefore, its role is purely advisory and, despite Narragansett Improvement's attempts to convince us otherwise, the commission could not have "registered" historical cemeteries, as that term is used in chapter 18 of title 23.[21] Although Narragansett Improvement does not dispute the purely advisory capacity of the advisory commission, it argues that the commission violated plaintiffs' "constitutionally protected interest" by not affording them "notice or an

---

**21.** The authority to register historical cemeteries in Rhode Island is actually vested with the recorder of deeds of the city or town in which such a cemetery is located. Section 23–18–10.1.

opportunity to be heard" prior to inventorying two historical cemeteries on the property. However, as discussed *supra*, this Court previously has declined to entertain a due process challenge to the actions of a purely advisory governmental body. *See In re Commission on Judicial Tenure and Discipline*, 916 A.2d at 752. Much like the commission in *In re Commission on Judicial Tenure and Discipline*, which lacked the authority to discipline judges, the commission in this case lacks the authority to register historical cemeteries in the land evidence records. *See id.* at 751. Because the advisory commission's role is purely advisory, plaintiffs do not have any "protected liberty interest" in the commission's actions. *See Velasco–Gutierrez*, 732 F.2d at 798; *see also Parenti*, 727 F.2d at 26; *In re Commission on Judicial Tenure and Discipline*, 916 A.2d at 751–52. Therefore, we respectfully reject Narragansett Improvement's argument that the actions of the commission violated plaintiffs' procedural due process rights.

Narragansett Improvement argues that even if the advisory commission itself did not register the historical cemeteries in the land evidence records, it "register[ed]" them in an internal database, then "issu[ed] multiple correspondences to the [t]own" proclaiming as such and "testif[ied] before the [p]lanning [b]oard[,] with the express intention of halting the furtherance of" plaintiffs' land development project. Narragansett Improvement further argues that the advisory commission's conduct directly resulted in the planning board's denial of plaintiffs' application for land development, as well as in the town's registration, in the land evidence records, of the historical cemeteries. Irrespective of the commission's intent, however, its conduct did not prevent plaintiffs from developing on the property, nor did it have any other legal effect on plaintiffs.

Moreover, North Smithfield representatives are in no way bound to follow the advice of the advisory commission; indeed, they act independently of it. Therefore, it is clear to us that, as a matter of law, plaintiffs' procedural due process claim cannot be asserted against the advisory commission.

■ Narragansett Improvement also argues that the advisory commission violated plaintiffs' substantive due process rights. We previously have recognized that a party cannot bring a substantive legal claim against a governmental body acting in a purely advisory capacity. *See Franco v. Wheelock*, 750 A.2d 957, 960–61 (R.I.2000) (restaurant lacked standing to appeal from advisory opinion of zoning board of review). Other jurisdictions similarly have refused to entertain substantive legal actions with respect to purely advisory conduct of governmental bodies. *See, e.g., United States ex rel. Saint Regis Mohawk Tribe v. President R.C.—St. Regis Management Co.*, 451 F.3d 44, 49 n. 4 (2nd Cir.2006) (an opinion letter from National Indian Gaming Commission's general counsel was "merely advisory and [did] not constitute a final agency decision capable of being appealed"); *Breneman v. United States*, 57 Fed.Cl. 571, 585 (2003) (Federal Aviation Administration's determination, that a hill and fence on plaintiffs' property would constitute a hazard to air navigation, did not amount to a "taking" because it had "no enforceable legal effect") (internal quotation marks omitted). We are satisfied that in this case, the advisory commission's conduct was not legally actionable. It is undisputed that the commission inventoried two historical cemeteries in an internal database, and that Ms. Wheeler, chairperson of the commission, testified as to the same at the August 2, 2007 planning board meeting. That, however, was the extent of the advisory commission's in-

volvement in the planning board's decision to deny plaintiffs' application for development on their land.[22] Because the advisory commission's actions were purely advisory and not enforceable to any extent, we decline to recognize plaintiffs' substantive due process claim.

 Finally, Narragansett Improvement asserts that plaintiffs' slander of title claim against defendants should not have been dismissed. "Slander of title occurs when a party maliciously makes false statements about another party's ownership of real property, which then results in the owner suffering a pecuniary loss." *Keystone Elevator Co. v. Johnson & Wales University*, 850 A.2d 912, 923 (R.I.2004). This Court has emphasized that the element of malice is not malice in its "worst sense," but rather is an intent to deceive or injure. *Arnold Road Realty Associates, LLC v. Tiogue Fire District*, 873 A.2d 119, 126 (R.I.2005) (quoting *Hopkins v. Drowne*, 21 R.I. 20, 23, 41 A. 567, 568 (1898)). As stated *supra*, it is the nonmoving party's burden, on summary judgment, to prove the existence of a genuine issue of material fact and to not rest upon allegations, conclusions, or legal opinions. *DeSantis*, 891 A.2d at 877.

Specifically, Narragansett Improvement contends that the advisory commission maliciously uttered false statements concerning the property in correspondence issued to Mr. Gagnon of the conservation commission, with copies provided to the town council and the planning board. The correspondence in question stated that the advisory commission "ha[d] been informed by the Providence County Commissioner, Edna Kent, of the two (2) new cemeteries which ha[d] been registered with the RI

Historical Cemetery Database as NS 52 and NS 53." Narragansett Improvement further contends that said statement was malicious because the advisory commission is not vested with statutory authority to notify local municipalities about historical cemeteries, and because the advisory commission intended for the planning board to deny plaintiffs' application, thereby preventing the development of the property. To support this contention, Narragansett Improvement relies upon the deposition testimony of Ms. Wheeler, the advisory commission chair, and it highlights the following exchange:

"Q. When you told the [P]lanning [B]oard that it was proved that these rock piles were cemeteries, you intended that they would rely on that statement, correct?

"A. Yes.

"Q. And you wanted them to rely on that statement because you wanted them to prevent the development of the area where these alleged historical cemeteries were located?

"A. Prevent in the area where they are, not prevent the whole development."

It is clear from a review of the planning board's "Findings of Fact & Decision," however, that the board did not rely upon either the correspondence of the advisory commission or the testimony of its chair in denying plaintiffs' application. Rather, it relied upon the testimony of Dr. Meli, who independently had been given the task by the town council "to begin the process of defining and protecting the area [in question] and present it to the [p]lanning [b]oard for their review."

---

22. Although Narragansett Improvement attempts to associate Dr. Meli, who also testified at the meeting on August 2, 2007, with the advisory commission, the record is clear that Dr. Meli was not a member of the commission, nor was he hired by the commission or associated with it in any formal capacity.

442

In the "Findings of Fact and Reasoning" section of its decision, the planning board commenced its discussion of the "[s]tone [m]ound [i]ssue" by stating that "[p]rior to proceeding with its findings the [p]lanning [b]oard must first take note of the presence of additional ancient burial places containing the remains of American Indians *as reported to the [b]oard by Dr. Frederick F. Meli.*" (Emphasis added.) Then, after acknowledging that the advisory commission had designated two areas within the property to be historical cemeteries, the board specifically noted that "Historic Cemetery NS 52 is comprised of a number of graves marked by stone mounds as located and identified by Dr. Meli to contain the ancient remains of American Indians."

Without again mentioning the advisory commission, the planning board repeatedly referred to the testimony of Dr. Meli. It considered his qualifications and voted to accept him as "an expert in the archaeological and anthropological disciplines concerning American Indians." The board then noted his testimony that he had "found artifacts that are consistent with an American Indian burial site." Furthermore, based upon Dr. Meli's critique, the board found that the PAL report submitted by plaintiffs was "of questionable accuracy and thus [could] not be relied upon." Finally, noting that Dr. Meli had not completed his final report, the planning board made no specific finding that the stone mounds were historical cemeteries. Rather, it stated:

"Even if such stone mounds located on the proposed subdivision are not found to be ancient American Indian burial sites, they are still a unique historic feature requiring identification and location as required by Item 21 of the Master Plan Checklist. Such features are of an important historical interest to the Town and [cannot] in this case be solely entrusted to the developer Applicant to locate and identify without verification and oversight by Dr. Meli."

In light of our *de novo* review, we are satisfied that Narragansett Improvement has failed to prove the existence of a disputed issue of material fact with respect to an essential element of its claim of slander of title. Viewing the evidence most advantageously to the plaintiffs, as we must, we conclude that the plaintiffs did present competent evidence establishing a dispute concerning the issues of whether the advisory commission made false statements and whether it acted with malice. The record is devoid of competent evidence, however, tending to show that the actions of the advisory commission resulted in a pecuniary loss to the plaintiffs. Even if Narragansett Improvement could show that the planning board relied to some extent upon the actions of the advisory commission, the independent decision of the planning board to deny plaintiffs' application constitutes a superseding cause of Narragansett Improvement's alleged pecuniary loss. *See Jacob v. Curt,* 898 F.2d 838, 839 (1st Cir.1990) (affirming district court's dismissal of plaintiff's complaint against a researcher and noting that "[e]ven if * * * government officials relied on [the researcher's] research and opinions, the independent decision to credit his views and [act upon them] stands as a superceding cause of plaintiff's claimed harm"). As noted *supra,* the planning board predicated its findings with respect to the issue of historical cemeteries on the property primarily upon the testimony of Dr. Meli, rather than upon the advisory commission's "registration" of the two stone mounds in its database. Significantly, the planning board made no conclusive finding that the stone mounds were, in fact, American Indian burial sites. Moreover, the planning board conducted a comprehensive review of the proposed development project and denied the plaintiffs' application for a host of reasons other than

the possible existence of historical cemeteries, including the plaintiffs' failure to comply with a number of statutory requirements and subdivision regulations. Accordingly, we affirm the trial justice's dismissal of the plaintiffs' slander of title claim.

## V

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.