J-S52009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERNEST WILLIAMS | : | |
| | : | |
| Appellant | : | No. 2589 EDA 2018 |

Appeal from the Order Entered August 15, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008700-2012

BEFORE:  OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 21, 2019**

Ernest Williams appeals from the order entered August 15, 2018, in the Court of Common Pleas of Philadelphia County, that dismissed, without a hearing, his first counseled petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Williams seeks relief from the judgment of sentence to serve an aggregate term of 10 to 20 years' imprisonment, imposed upon his convictions for one count each of aggravated assault, possessing instruments of crime (PIC), carrying firearms on public streets in Philadelphia (VUFA), and persons not to possess firearms.[1]  On appeal, Williams claims trial counsel was ineffective for:  (1) failing to investigate and locate an exculpatory witness; and (2) failing to argue self-

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), 6108, and 6105(a)(1), respectively.

J-S52009-19

defense based upon the castle doctrine. *See* Williams' Brief at 4. For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's June 11, 2015 1925(a) opinion on direct appeal and our review of the certified record:

*EVIDENCE AT TRIAL*

Ms. Linesa Gunther testified that on June 15, 2012, she was living on the 5100 block of Harlan Street in the City of Philadelphia, where she got into a physical fight with her neighbor, Ms. Millicent Williams ["Wife"], whom she knew from the block, but did not socialize with. She testified that the fight arose out of an altercation between her son and daughter and [ ] Williams' son in front of the Williams'[ ] home. At some point during the fight she was punched in the back of the head by [Williams], at which time her brother, the complainant Hakiem Gunther, and her cousin began fighting with [Williams]. [Williams] then broke away from her brother and cousin, ran into the house and returned with a gun shooting into the crowd as he came off his porch.

Ms. Gunther testified that everyone immediately fled the scene with her brother, being chased by [Williams], ran back towards her home. "He ran down the street after my brother. He ran up on the porch. Hakiem, that's my brother, he couldn't get in the house, and [Williams] started shooting. Hakiem fell. [Williams] then stood over him and shot three or four more times." [Williams'] gun emptied after firing additional shots into the house, at which point he left her porch.

The complainant, Mr. Hakiem Gunther, testified that at approximately 9:00 p.m., on June 5, 2012, as he was approaching his sister's house for a visit, he observed his sister embroiled in a physical fight with another woman. As he drew near he observed a male with white hair get involved in the fight. When he called out that[ ] it's "a girl fight," he got hit and began fighting with the white haired male.

At some point, thinking everything was over, he began walking away when he heard someone call out, "He got a gun." He next

- 2 -

remembers being shot on the porch of his sister's house by a figure standing over him, before he passed out. He testified that he was shot three times, in the groin, thigh and back and is now paralyzed as a result.

Ms. Centoria Gunther testified that on June 15, 2012, she was living on the 5100 block of Harlan Street with her sister, Ms. Linesa Gunther, and her cousin. At approximately 9:00 p.m. she saw her sister engaged in a fight in front of the [Williams'] house with [Wife], whom she knew from the block and also did not socialize with. While the two women were fighting, she saw [Williams] punch her sister in the back of the head, at which point, her brother, the complainant Hakim Gunther, and her cousin began fighting with [Williams].

She testified that [Williams] got up, after falling to the ground and being kicked, ran into his house and, within a minute or two, came back out with a gun shooting from the top of his steps in the direction of Mr. Gunther. [Williams] then chased after Mr. Gunther, firing shots at him, as he ran towards her house. When Mr. Gunther reached the porch of her house [Williams] shot him from a distance of three feet striking him in the back, causing him to fall to the ground. When [Williams] couldn't gain entry into the house through the locked door, he fled from the porch, running back into his own home.

[Wife] testified that she got into a physical fight with Ms. Linesa Gunther, arising out of a dispute between their children. She also testified that [Williams] became involved in a fight with two men during which he was able to break away and retrieve a gun from the house. [Williams] then returned and fired two shots. On hearing the two shots, the "fight stopped. That's when they let me go, after I heard these two shots, everybody just—they started running and they let me go . . ."

Philadelphia Police Officer Darnell Jessie testified that at approximately 9:00 p.m., on June 15, 2012, he was in uniform on routine patrol in a marked patrol car, and he responded to a radio call of a shooting. He arrived on the call at 5134 Harlan Street "less than two minutes later" and found Mr. Gunther lying on his back, in a pool of blood on the front porch, with another man hovering over him calling out, "Stay with me." Concerned for the life of the victim, Officer Jessie placed Mr. Gunther in the back of

his patrol car and immediately transported him directly to the Hospital of the University of Pennsylvania for treatment.

Philadelphia Police Officer Richard Link testified that at approximately 9:00 p.m., on June 15, 2012, he too responded to a radio call of a shooting on the 5100 block of Harlan Street. On arriving at 5134 Harlan Street, he observed a black male lying unconscious on the porch. After securing the scene, he recovered two 45 caliber fired shell casings and one live round from the street near the porch where he first observed the complainant. He also testified that the only blood documented at the scene was found on the porch and the steps leading up to it. He attributed the presence of the blood on the steps to the complainant being carried from the porch to the patrol car for transport to the hospital.

Trial Court Opinion, 6/11/2015, at 3-6 (record citations omitted).

On June 5, 2014, a jury convicted Williams of aggravated assault, PIC, and VUFA. The trial court found him guilty of persons not to possess firearms. On September 24, 2014, the trial court sentenced Williams as delineated above. Williams filed a timely appeal.

On December 30, 2015, this Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Williams' petition for allowance of appeal on June 15, 2016. *Commonwealth v. Williams*, 135 A.3d 669 [301 EDA 2016] (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 140 A.3d 13 (Pa. 2016).

On September 7, 2017, Williams filed the instant timely PCRA petition. On July 11, 2018, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss. On July 27, 2018, Williams filed a response to the Rule 907 notice.

On August 15, 2018, the PCRA court dismissed the petition. This timely appeal

followed.[2]

The principles that guide our review are well settled.

We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error. When supported by the record, the PCRA court's credibility determinations are binding on this Court, but we apply a *de novo* standard of review to the PCRA court's legal conclusions. We must review the PCRA court's findings and the evidence of record in a light most favorable to the Commonwealth as the winner at the trial level.

* * * *

With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. Our review of counsel's performance must be highly deferential. To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

---

[2] On September 10, 2018, the PCRA court ordered Williams to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Following the appointment of new counsel, Williams filed a timely concise statement on December 18, 2018; the court issued its opinion on May 2, 2019.

Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, [a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first.

\* \* \* \*

To prove that trial counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

\* \* \* \*

With respect to [a petitioner's] claim that he should have been provided a full evidentiary hearing on all of his PCRA claims, the law in this area is clear:

[T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. We stress that an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.

***Commonwealth v. Brown***, 196 A.3d 130, 150-151, 167, 192-193 (Pa.

2018) (citations, internal citations, and quotation marks omitted).

- 6 -

Williams first claims trial counsel was ineffective for failing to call Gregory Gordon, a neighbor who allegedly witnessed the shooting, as a defense witness.[3]  Williams' Brief, at 13-16.

In his PCRA petition and in his response to the Rule 907 notice, Williams claimed Gordon's testimony was necessary to demonstrate "[Williams] was standing on his front steps when he fired the shots that struck and injured the complainant. . . . the Commonwealth's witnesses . . . stated that [Williams] was in the middle of the street when he fired."  Petition for Post Conviction Relief, 9/07/2017, at unnumbered pages 2-3; *see also* Petitioner's Objections to the Court's Notice of Intent to Dismiss Pursuant to Pa.R.Crim.P. 907, 7/27/2018, at 1.  In his Rule 1925(b) statement, Williams stated Gordon would have testified, "[Williams] discharged his weapon from the steps of his own home, when defending his wife who was being beaten by a group of assailants, to include the complainant[.]"  Statement of Errors Complained of on Appeal, 12/16/2018, at 1.

On appeal, Williams has largely abandoned this contention.  Instead, he now argues Gordon would have supported Wife's testimony that multiple women, who cut her with razors, attacked her.  Williams' Brief, at 14. Further,

---

[3] On February 3, 2017, a private detective, along with a Detective Keary Willis, interviewed Gordon.  Williams attached the unsworn interview transcript as an exhibit to his PCRA petition.  *See* interview, 2/03/2017, at unnumbered pages 1-3.

Gordon would testify the complainant shot at Williams and his family with a rifle and Williams only shot to defend his life. *Id.* at 15.

We have held an appellant waives PCRA issues not raised in a PCRA petition or amended PCRA on appeal. ***Commonwealth v. Lauro***, 819 A.2d 100, 103-104 (Pa. Super. 2003), *appeal denied*, 830 A.2d 975 (Pa. 2003) (waiving five issues not in original or amended PCRA petition). Also, as amended in 2007, Rule 1925 provides issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. Pa.R.A.P. 1925(b)(4)(vii); ***see also Commonwealth v. Lord,*** 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in* ***Commonwealth v. Burton***, 973 A.2d 428, 430 (Pa. Super. 2009). Lastly, an appellant cannot raise an argument for the first time on appeal. ***Commonwealth v. Hanford***, 937 A.2d 1094, 1098 n.3 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008) (new legal theories cannot be raised for first time on appeal); Pa.R.A.P. 302(a).

Here, Williams did not argue in his PCRA petition, his response to the Rule 907 notice, or his Rule 1925(b) statement, that Gordon's testimony was necessary to demonstrate the complainant discharged a rifle at Williams and his family or Gordon would bolster Wife's testimony that her assailants were armed. Instead, he raised this claim for the first time on appeal. Therefore, he waived his first issue for appellate review. ***See Lord, supra*** at 308; ***Hanford***, ***supra*** at 1098 n.3; ***Lauro***, ***supra*** at 103-104.

In any event, even if we were to address the merits of the claim, it would fail. Initially, we agree with the PCRA court that Williams failed to show trial counsel knew or should have known of Gordon's existence. *See* PCRA Court Opinion, 5/02/2019, at 7. As the PCRA court aptly stated:

> It is clear, from both the record and [ ] Gordon's statement that not the investigating officers, the Commonwealth, or [Williams], were aware of [ ] Gordon's presence at the shooting. Furthermore, it is also clear from his statement that [ ] Gordon made no attempt to notify either the police investigating the shooting, or [Williams], of his observations. [Williams] has not shown how counsel knew of, or should have known of, the existence of [ ] Gordon. Therefore, trial counsel cannot be faulted for failing to present a witness who was not only unknown to [the] parties, but who also made no attempt to reach out in any manner to make his presence known to any of the parties.

*Id.* at 7-8.

Moreover, even if we were to agree counsel should have known of Gordon's existence, the record belies Williams' claim that Gordon's testimony was necessary to counter the Commonwealth's theory that Williams began shooting in the middle of the street. At trial, both the Commonwealth witnesses and Williams testified consistently, Williams began shooting from his porch steps. *See* N.T. Trial, 6/03/2014, at 58, 60, 74, 84; N.T. Trial, 6/04/2014, at 20, 23, 154. Thus, Gordon's testimony Williams began shooting from the steps to his porch would have been merely cumulative. This Court has held counsel is not ineffective for failing to present cumulative testimony. *See Commonwealth v. Milligan*, 693 A.2d 1313, 1319 (Pa. Super. 1997) (citations omitted).

Lastly, the PCRA court found Gordon's statement was not credible. PCRA Court Opinion, 5/02/2019, at 8. "A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." *Commonwealth v. Treiber*, 21 A.3d 435, 444 (Pa. 2015) (citation omitted). Here, the record supports that determination.

Gordon's statement that there was a second shooter,[4] who fired a rifle at Williams and his family, is completely at odds with the testimony of every other witness, including both Wife and Williams, as well as all of the physical evidence at trial. Moreover, in his interview, Gordon admitted to tampering with evidence at the crime scene. Interview, 2/03/2017, at unnumbered page 2. Williams has failed to demonstrate how counsel's failure to secure the testimony of a witness who tampered with evidence and who contradicted the testimony of every other witness, including Williams, was so detrimental as to have denied him a fair trial. *See Brown*, *supra*. Accordingly, even if Williams had not waived this issue, his first claim does not merit relief.

---

[4] In his brief, Williams claims Gordon stated the complainant, Gunther, was the second shooter. Williams' Brief, at 15. However, this is not accurate. In the interview, Gordon does not identify Gunther as the second shooter; instead, he says the second shooter was a "young boy." Interview, 2/03/2017, at unnumbered pages 1-2. Gunther was in his late 20s at the time of the shooting.

- 10 -

In his second claim, Williams contends trial counsel was ineffective for failing to pursue a defense based on the "castle doctrine," pursuant to 18 Pa.C.S.A. § 505(b)(2.1)(i). Williams' Brief, at 17-19. We disagree.

The PCRA court aptly disposed of this issue as follows:

. . . [Williams] now complains that [c]ounsel should have argued the "castle doctrine," citing 18 Pa.C.S.A. § 505(b)(2.1)(i), which provides, in relevant part, that: "(2.1). . . an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, . . . if both of the following conditions exist: i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling. . .; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence. . . ." "The castle doctrine is a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense." *Commonwealth v. Childs*, 142 A.3d 823[, 824], n.1 (Pa. 2016) (internal citations omitted).

At trial, [c]ounsel raised the issue of justification in arguing self-defense before the jury. In addressing this issue, the [trial c]ourt instructed the jury that if [Williams] "reasonably believed that his wife was in danger of suffering serious bodily injury or death, then the law says he's justified in using deadly force. The lawful defense of others is called justification. If [Williams'] actions were justified, you cannot find him guilty." (N.T., 6/4/[20]14 pg. 207) The [trial c]ourt further instructed the jury that if [Williams] "reasonably believed he had to use deadly force to stop the beating of his wife, then that's self-defense and he's not guilty of any of these crimes. Even if he was wrong in that judgment but he was reasonable in thinking that, then that's self-defense and he's not guilty of any of these crimes. (N.T., 6/4/[20]14 pgs. 211, 212)[.] Without specifically addressing the "castle doctrine," this instruction, accomplished the same goal, in making it clear to the jury that [Williams] had no duty to retreat if he felt he "had to use deadly force to stop the beating of his wife."

Additionally, there is no evidence on the record justifying an instruction on the "castle doctrine." That is, there is no evidence, including Mr. Gordon's statement, that anyone attempted to "unlawfully and forcefully" enter his home or "unlawfully and forcefully" attempted to remove anyone else from his home.

Finally, to be eligible for PCRA relief, 42 Pa.C.S.A. [§] 9543 provides in part that: "the petitioner must plead and prove by a preponderance of the evidence all of the following: That the allegation of error has not been previously litigated or waived." Our Superior Court, [in] ***Commonwealth v. Williams***, No. 3010 EDA 2014, 2015 WL 9596616, at *1, in affirming [Williams'] conviction and sentence, has ruled on this issue in finding, that the "Commonwealth met its burden of proof that [Williams] became the aggressor when he chased an unarmed victim onto the porch where [Williams] shot the victim at point blank range . . ."

PCRA Ct. Op., at 8-10.

We have thoroughly scrutinized the record and we agree with PCRA court Williams has not shown counsel was ineffective in failing to raise a meritless defense. ***See Brown***, ***supra*** at 150-151.

As Williams' claims are both waived and meritless, we affirm the denial of his PCRA petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/19